UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN JOEY MARKS, | Case No. 2:17-cv-01413-JCM-BNW |
| Petitioner, | |
| v. | **ORDER** |
| CALVIN JOHNSON, *et al.*, | |
| Respondents. | |

## I.    Summary

This action is a petition for writ of habeas corpus by John Joey Marks, an individual incarcerated at Nevada's High Desert State Prison. Marks is represented by appointed counsel. The case is before the Court for resolution on its merits. The Court will deny Marks's petition and will deny him a certificate of appealability.

## II.    Background

On July 2, 2015, Marks was convicted, upon a guilty plea, in Nevada's Eighth Judicial District Court (Clark County), of robbery with use of a deadly weapon, and he was sentenced, as a habitual offender, to 20 years in prison, with minimum parole eligibility of 8 years. *See* Judgment of Conviction, Exh. 7 (ECF No. 29-7). Marks did not appeal from the judgment of conviction.

Marks filed a *pro se* habeas petition in the state district court on March 30, 2016. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14). The court denied Marks's requests for appointment of counsel and for an evidentiary hearing and denied his petition in a written order filed on August 9, 2016. *See* Findings of Fact, Conclusions of Law and Order, Exh. 30 (ECF No. 29-30). Marks appealed, and

the Nevada Court of Appeals affirmed the denial of Marks's petition on November 18, 2016. *See* Order of Affirmance, Exh. 40 (ECF No. 30-5). The court denied rehearing on January 27, 2017. *See* Order Denying Rehearing, Exh. 42 (ECF No. 30-7).

This Court received a *pro se* petition for writ of habeas corpus from Marks, initiating this action, on May 16, 2017. *See* Petition for Writ of Habeas Corpus (ECF No. 4). The Court granted Marks's motion for appointment of counsel and appointed counsel to represent him. *See* Order entered June 1, 2017 (ECF No. 3). With appointed counsel, Marks filed a first amended petition on June 23, 2017 (ECF No. 7), and a second amended petition on February 28, 2018 (ECF No. 20). In his second amended petition—now his operative petition—Marks asserts the following grounds for relief:

> 1A.    Marks's guilty plea was not entered into knowingly, intelligently, or voluntarily, because of his low intellectual functioning, mental illness, and traumatic brain injury.

> 1B.    Marks's guilty plea was not entered into knowingly, intelligently, or voluntarily, because his trial counsel placed undue pressure on him and coerced him into accepting the State's offer.

> 2.    Marks was improperly sentenced as a habitual offender, because constitutionally invalid prior felony convictions were used to enhance his sentence.

> 3A.    Marks received ineffective assistance of his trial counsel because counsel advised him to plead guilty without a determination of his competence.

> 3B.    Marks received ineffective assistance of his trial counsel because counsel failed to adequately investigate his case.

> 3C.    Marks received ineffective assistance of his trial counsel because counsel failed to challenge the prior convictions used to enhance his sentence.

> 3D.    Marks received ineffective assistance of his trial counsel because counsel failed to consult with him regarding his right to appeal and failed to file a notice of appeal on his behalf.

Second Amended Petition (ECF No. 20).

On August 29, 2018, Marks filed a motion for stay (ECF No. 36), conceding that claims in his second amended petition were unexhausted in state court. Respondents did not oppose the motion for stay, and the case was stayed on September 19, 2018,

pending Marks's further state-court proceedings. *See* Order entered September 19, 2018 (ECF No. 38).

Meanwhile, on April 13, 2018, Marks initiated a second state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 46 (ECF No. 30-11). The state district court denied the petition in a written order filed on September 17, 2018. *See* Findings of Fact, Conclusions of Law and Order, Exh. 66 (ECF No. 53-3). The Nevada Court of Appeals affirmed on July 30, 2019, ruling that Marks's petition was procedurally barred. *See* Order of Affirmance, Exh. 62 (ECF No. 40-2).

The stay of this action was lifted on October 18, 2019. *See* Order entered October 18, 2019 (ECF No. 41). Marks gave notice that further amendment of his petition was unnecessary (ECF No. 42).

On July 17, 2020, Respondents filed a motion to dismiss (ECF No. 52), contending that all Marks's claims are barred by the procedural default doctrine. On January 22, 2021, the Court denied the motion to dismiss, without prejudice to Respondents asserting the procedural default defense in their answer. *See* Order entered January 22, 2021 (ECF No. 63).

Respondents filed their answer on May 24, 2021 (ECF No. 70), and Marks filed his reply on July 23, 2021 (ECF No. 72).

On May 27, 2022, the Court determined that supplemental briefing was called for following the United States Supreme Court's decision in *Shinn v. Ramirez*, 142 S. Ct. 1717 (2022); the Court granted the parties an opportunity to supplement their answer and reply to address the effect of *Ramirez* in this case. *See* Order entered May 27, 2022 (ECF No. 73). Respondents filed a supplement to their answer on July 18, 2022 (ECF No. 79). Marks filed a supplemental reply on September 1, 2022 (ECF No. 84).

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

## III.   Discussion

### A.   Standard of Review

28 U.S.C. § 2254(d) (enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)) sets forth the standard of review generally applicable to claims previously asserted and resolved on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). The analysis under section 2254(d) looks to the law that was clearly established

by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has also instructed that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75; *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (AEDPA standard is "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**B.    Procedural Default**

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus relief, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external

impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that ineffective assistance of counsel, or the lack of counsel, in a state post-conviction proceeding, may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15. In *Martinez*, however, the Supreme Court established an equitable exception to that rule, holding that the absence or ineffective assistance of counsel at an initial-review collateral proceeding may establish cause to excuse a petitioner's procedural default of substantial claims of ineffective assistance of trial counsel. *See Martinez*, 566 U.S. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8.

In their motion to dismiss (ECF No. 52), Respondents asserted that all the claims in Marks's second amended habeas petition are procedurally defaulted. Marks, in turn, argued that he can show cause and prejudice to overcome the procedural defaults on account of his intellectual disability, which, according to Marks, rendered him unable to comply with State procedural requirements, and, with respect to his claims of ineffective assistance of trial counsel, under *Martinez,* because he did not have counsel in his first state habeas action. *See* Opposition to Motion to Dismiss (ECF No. 56). The Court determined that the procedural default issues are intertwined with the merits of Marks's

claims, such that the procedural default issues would be better considered in conjunction with the merits of the claims. The Court, therefore, denied the motion to dismiss without prejudice to Respondents asserting procedural default as a defense to Marks's claims in their answer. *See* Order entered January 22, 2021 (ECF No. 63).

### C.   *Ramirez* and 28 U.S.C. § 2254(e)(2)

In *Shinn v. Ramirez*, 142 S.Ct. 1718 (2022), the Supreme Court held that under 28 U.S.C. § 2254(e)(2), "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Ramirez*, 142 S.Ct. at 1734. Section 2254(e)(2) applies when the petitioner "has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). Such failure "is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Ramirez*, 142 S.Ct. at 1735. The *Ramirez* Court pointed out that, under longstanding authority, a prisoner bears the risk of attorney error unless counsel provides constitutionally ineffective assistance, and since there is no constitutional right to counsel in state postconviction proceedings, "a prisoner ordinarily must 'bea[r] responsibility' for all attorney errors during those proceedings." *Id.* (quoting *Coleman*, 501 U.S. at 754; *Williams*, 529 U.S. at 432). "Among those errors," the Court explained, "a state prisoner is responsible for counsel's negligent failure to develop the state postconviction record." *Id.* Therefore, the Court held that in such a case, where the petitioner's postconviction counsel negligently failed to develop the factual basis of a claim, § 2254(e)(2) applies, and a federal court may order an evidentiary hearing, or otherwise expand the state-court record, only if the petitioner satisfies § 2254(e)(2)'s stringent requirements. *Id.* Under § 2254(e)(2), a district court cannot hold an evidentiary hearing unless (1) the claim relies on either a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review or a factual predicate that could not have been previously discovered through due diligence and

(2) the facts underlying the claim would establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty. 28 U.S.C. § 2254(e)(2).

In his supplemental reply, Marks argues that *Ramirez* did not disturb *Martinez's* holding that a petitioner may overcome the procedural default of a claim of ineffective assistance of trial counsel by showing that he was without counsel in his state habeas action, and that *Ramirez* did not involve the analysis of whether such a prisoner, who was *pro se* in his state habeas action, failed to develop the factual basis for a claim within the meaning of § 2254(e)(2). *See* Supplemental Reply (ECF No. 84), pp. 2–6. The Court agrees: *Ramirez* involved the question whether a petitioner failed to develop the factual basis of a claim in State court proceedings within the meaning of § 2254(e)(2) where his counsel in those proceedings performed ineffectively; *Ramirez* did not involve, and its holding does not affect, the question whether a petitioner like Marks, who was *pro se* in his state habeas action, failed to develop the factual basis of a claim in that action within the meaning of § 2254(e)(2).

In their supplemental briefing, the parties go on to disagree about whether Marks failed, within the meaning of § 2254(e)(2), to develop the factual basis of his claims in his first state habeas action. *See* Supplement to Respondents' Answer (ECF No. 79), pp. 6–8; Supplemental Reply (ECF No. 84), pp. 6–9. The Court determines, however, that Marks was not at fault for not developing the factual basis of his claims in his first state habeas action, that he was diligent in attempting to do so, and that, therefore, he did not fail to do so within the meaning of § 2254(e)(2). In his petition in his first state habeas action, Marks alleged that he suffered from mental illness and/or cognitive deficits, that he was illiterate, and that he could not develop the factual basis of his claims without counsel. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14); *see also* Transcript of Proceedings, May 11, 2016, Exh. 21 (ECF No. 29-21) (Marks's sister, Helen Marks, informing court that Marks is "mentally retarded, he has Down syndrome"). Marks repeatedly requested appointment of

counsel in that action, but the state district court denied his requests, and he was forced to proceed *pro se. See* Motion to Appoint Counsel, Exh. 12 (ECF No. 29-12); Notice of Motion, Exh. 13 (ECF No. 29-13); Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14, pp. 8, 23–24, 30–31); Transcript of Proceedings, June 6, 2016, Exh. 23 (ECF No. 29-23), pp. 8–9 (Deputy Public Defender, conveying wishes of Marks's family, requesting appointment of counsel for Marks); Motion to Appoint Counsel, Exh. 24 (ECF No. 29-24); Notice of Motion, Exh. 25 (ECF No. 29-25); Court Minutes, July 11, 2016, Exh. 27 (ECF No. 29-27); Notice of Appeal, Exh. 28 (ECF No. 29-28) (appealing, in part, from denial of motion for appointment of counsel); Findings of Fact, Conclusions of Law and Order, Exh. 30 (ECF No. 29-30), p. 7; Notice of Appeal, Exh. 31 (ECF No. 29-31) (again, appealing, in part, from denial of motion for appointment of counsel); Order Denying Defendant's Motion to Appoint Counsel, Exh. 32 (ECF No. 29-32). Marks also requested an evidentiary hearing. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14, pp. 8, 23–24, 30–31). He stated in his petition, in connection with his request for an evidentiary hearing:

> The petitioner also requests to be appointed new counsel and an Evidentiary Hearing to cross examine his prior attorney in regards to her failure to investigate the petitioner's competency and mental stability by a psychological evaluation. The petitioner is not able to read or write and is in need of appointed counsel to effectively do that.

*Id.* (ECF No. 29-14 at 23–24). The Court finds that, under all the circumstances as reflected in the record of Marks's first state habeas action, Marks was diligent in requesting counsel and an evidentiary hearing and was not at fault for not being able to develop the factual basis for his claims in that action. Therefore, the Court determines that 28 U.S.C. § 2254(e)(2) and *Ramirez* do not preclude Marks from presenting evidence not developed in state court.

### D.   Ineffective Assistance of Counsel – Legal Standards

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an

objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. When the claim is ineffective assistance of counsel in the context of a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Where a state court previously adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (double deference required with respect to state court adjudications of *Strickland* claims).

### E.    Knowing, Intelligent and Voluntary Nature of Guilty Plea

#### 1.    Alleged Low Intellectual Functioning, Mental Illness and Traumatic Brain Injury (Grounds 1A and 3A)

In Ground 1A, Marks claims that his federal constitutional rights were violated because his guilty plea was not entered into knowingly, intelligently and voluntarily, as a result of his "low intellectual functioning, mental illness and traumatic brain injury." Second Amended Petition (ECF No. 20), pp. 5–10. In Ground 3A, Marks claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel because his trial counsel "advised him to plead guilty without a determination of his competence." *Id.* at 14–19.

Marks did not assert in his first state habeas action the substantive claim in Ground 1A, that his guilty plea was not knowing, intelligent and voluntary on account of his low intellectual functioning, mental illness and traumatic brain injury. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14); Appellant's Opening Brief, Exh. 34 (ECF No. 29-34); Order of Affirmance, Exh. 40 (ECF No. 30-5). That claim was first asserted in state court in Marks's second state habeas action, and the state courts ruled it procedurally barred in that case. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 46 (ECF No. 30-11); Findings of Fact, Conclusions of Law and Order, Exh. 66 (ECF No. 53-3); Order of Affirmance, Exh. 62 (ECF No. 40-2). The substantive claim in Ground 1A is therefore subject to denial as procedurally defaulted unless Marks can show cause and prejudice relative to the procedural default.

In his first state habeas action, Marks did assert a claim similar to the claim of ineffective assistance of trial counsel in Ground 3A. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14). The state district court denied relief on that claim, and the Nevada Court of Appeals affirmed, ruling as follows:

.... The district court found the record was devoid of any indication Marks was incompetent prior to and during the entry of his plea. Marks informed the district court of his reading and writing disability and stated counsel had explained the contents of the written guilty plea agreement to him. Marks' alleged mental health issues did not necessarily render him incompetent to participate in the criminal proceedings.

\* \* \*

.... The factual findings contained in the written order are supported by the record and we conclude the district court did not err by denying Marks' petition without appointing counsel. *See* NRS 34.750(1); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005); *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004); *Riker v. State*, 111 Nev. 1316, 1325, 905 P.2d 706, 711–12 (1995).

Order of Affirmance, Exh. 40, pp. 2–3 (ECF No. 30-5, pp. 3–4).

The federal constitution requires that a criminal defendant's guilty plea must be knowing, intelligent and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969); *Brady v. United States*, 397 U.S. 742, 747 (1970). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Parke v. Raley*, 506 U.S. 20, 29 (1992) (citations and quotation marks omitted). A plea represents a voluntary and intelligent choice among the defendant's alternative courses of action where the record shows that the defendant voluntarily waived his right to a jury trial, his right to confront his accusers and his privilege against compulsory self-incrimination. *Id.*; *Boykin*, 395 U.S. at 242–43.

In justice court, at a hearing on April 22, 2015, at which Marks waived a preliminary hearing and informed the court that he would enter a plea agreement and plead guilty to robbery with use of a deadly weapon, the following exchange occurred:

MS. WESTMORELAND [Marks's counsel]:  Your Honor, we are going to go ahead and waive him up. He's going to plead guilty to robbery with use of a deadly weapon. He is going to stipulate to a large habitual stipulated 10-to-25 years.

Just, for the record, there is a possibility we may work something out, but for right now, that is the current offer, as well as the State will not oppose dismissal of case number 15F04524X.

THE COURT:  I mean I have no problem sending it up. What is happening with his parole hold?

MS. WESTMORELAND:  He's already up there.

THE COURT:  So this is going to have to run consecutive?

MS. WESTMORELAND:  Right. I explained to him it's mandatory by the federal statute to be consecutive.

THE COURT:  Okay, all right. I want to make sure we have a clean record.

Sir, do you understand the offer?

THE DEFENDANT [Marks]:  Yes, sir, I do.

THE COURT:  Okay, did you have a chance to talk to your attorney about that?

THE DEFENDANT:  Absolutely, sir.

THE COURT:  Okay, do you wish to accept it?

THE DEFENDANT:  Yes, sir, I wish to accept it.

THE COURT:  Same thing as everybody else, I'm going to send you up to the District Court.

Once you get up there, you get a copy of the actual Guilty Plea Agreement. Once you read that document and sign that document, that's when it becomes official.

THE DEFENDANT:  Yes, sir.

THE COURT:  If you change your mind between now and then, you will simply fight your case up in District Court.

Do you have any questions about that?

THE DEFENDANT: No, sir.

Reporter's Transcript, April 22, 2015, Exh. 5, pp. 2–4 (ECF No. 8-5, pp. 3–5).

Marks signed the guilty plea agreement on May 4, 2015. *See* Guilty Plea Agreement, Exh. 7 (ECF No. 8-7). In the guilty plea agreement, Marks agreed to plead guilty to robbery with use of a deadly weapon, and the parties stipulated that he would be sentenced under Nevada's "small habitual criminal" statute (NRS 207.010) to 8 to 20 years in prison, to run consecutive to his sentence in another case. *Id.* at 1 (ECF No. 8-

7, p. 2). The guilty plea agreement listed the rights Marks was giving up by pleading

guilty. *Id.* at 4–5 (ECF No. 8-7, pp. 5–6). The guilty plea agreement also stated:

> I have discussed the elements of all of the original charge(s) against me with my attorney and I understand the nature of the charge(s) against me.

> I understand that the State would have to prove each element of the charge(s) against me at trial.

> I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor.

> All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney.

> I believe that pleading guilty and accepting this plea bargain is in my best interest, and that a trial would be contrary to my best interest.

> I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.

> I am not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair my ability to comprehend or understand this agreement or the proceedings surrounding my entry of this plea.

> My attorney has answered all my questions regarding this guilty plea agreement and its consequences to my satisfaction and I am satisfied with the services provided by my attorney.

*Id.* at 5–6 (ECF No. 8-7, pp. 6–7). Additionally, the guilty plea agreement included a

certificate of counsel, signed by Marks's counsel, which included the following:

> 1.   I have fully explained to the Defendant the allegations contained in the charge(s) to which guilty pleas are being entered.

> 2.   I have advised the Defendant of the penalties for each charge and the restitution that the Defendant may be ordered to pay.

> *   *   *

> 4.   All pleas of guilty offered by the Defendant pursuant to this agreement are consistent with the facts known to me and are made with my advice to the Defendant.

> 5.   To the best of my knowledge and belief, the Defendant:

> a.   Is competent and understands the charges and the consequences of pleading guilty as provided in this agreement,

b.     Executed this agreement and will enter all guilty pleas pursuant hereto voluntarily, and

c.     Was not under the influence of intoxicating liquor, a controlled substance or other drug at the time I consulted with the Defendant as certified in paragraphs 1 and 2 above.

*Id.* at 7 (ECF No. 8-7, p. 8).

On that same day, May 4, 2015, Marks entered his guilty plea. Recorder's Transcript, May 4, 2015, Exh. 8 (ECF No. 8-8). Before accepting Marks's plea, the district court judge canvassed Marks as follows:

THE COURT:  …. I do have a guilty plea agreement before me. It's my understanding this defendant is going to plead guilty to robbery with use of a deadly weapon, category B felony. Parties stipulate to small habitual treatment pursuant to NRS 207.010 with a sentence of eight to twenty years in the Nevada Department of Corrections consecutive to his parole case. State will have no opposition to the dismissal of 15F04524X after sentencing. Is that correct, State?

MS. CRAGGS [prosecutor]:  Yes, your Honor.

THE COURT:  Anything to add, counsel?

MS. WESTMORELAND [Marks's counsel]:  No, your Honor.

THE COURT: Is that your understanding, sir?

THE DEFENDANT [Marks]:  Yes, your Honor.

THE COURT:  What is your true name?

THE DEFENDANT:  John Marks.

THE COURT:  How old are you, sir?

THE DEFENDANT:  I'm 48 years old.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Fifth grade.

THE COURT:  So you read, write, and understand the English language?

THE DEFENDANT:  I understand the English language. I have a problem reading and writing.  I have a disability.

THE COURT: All right. Do you understand that you're being charged with robbery with use of a deadly weapon, category B felony?

THE DEFENDANT:  Yes, ma'am.

THE COURT: How do you plead to that charge?

THE DEFENDANT:  Guilty, ma'am.

THE COURT:  Is anybody forcing you to plead guilty?

THE DEFENDANT: No, ma'am.

THE COURT:  Are you pleading guilty of your own free will?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand as a consequence of your plea the Court must sentence you to the Nevada Department of Corrections for a term not less than one year, not more than—I'm sorry. Not less than two years, not more than 15 years, plus a consecutive term of not less than one year and not more than 15 years for the deadly weapon enhancement; do you understand that, sir?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if you are sentenced under the small habitual criminal enhancement the Court must sentence you to a term not less than five years, not more than 20 years, in the Nevada Department of Corrections?

THE DEFENDANT:  Yes, I understand that.

THE COURT:  Do you understand that you'll be required to pay an administrative assessment fee?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand this is a nonprobationable offense?

THE DEFENDANT: Yes, your Honor, I understand.

THE COURT: Do you understand that sentencing is strictly up to the Court so nobody can promise you leniency or special treatment?

THE DEFENDANT:  Yes, I understand, your Honor.

THE COURT:  I have the original of your guilty plea agreement. Did you read through it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you understand it?

THE DEFENDANT:  Yes. My lawyer explained everything to me. Yes, your Honor.

THE COURT:  And then you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Showing you page six, is this your signature?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you sign it freely—

THE DEFENDANT:  Yes.

THE COURT:  —and voluntarily?

THE DEFENDANT:  Yes, I did.

THE COURT:  Do you understand by pleading guilty you're giving up the constitutional rights listed in this agreement?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that if you're not a United States citizen you may be deported based upon this guilty plea?

THE DEFENDANT:  Oh, yes, your Honor, I understand.

THE COURT:  Did you discuss your case and your rights with your attorney?

THE DEFENDANT:  Yes, your Honor, I did.

THE COURT:  Do you have any questions regarding your rights or this negotiation?

THE DEFENDANT:  No, your Honor.

THE COURT:  Are you pleading guilty because in truth and in fact on or about March 16th, 2015, here in Clark County, Nevada, you willfully, unlawfully, feloniously did take personal property, that being a food [card], from Rene Williams and/or Shawn Robinson, or in their presence by means of force, or violence, or fear of injury to them, without their consent and against their wills, and you used a deadly weapon, that being a firearm?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Court accepts your plea as being freely and voluntarily entered into.

*Id.* at 2–6 (ECF No. 8-8, pp. 3–7).

"Solemn declarations in open court carry a strong presumption of verity."

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Kaczynski*, 239

F.3d 1108, 1114–15 (9th Cir. 2001) (in-court statements of defendant entering plea

carry "substantial weight"). Marks stated in court, without reservation, that he understood the rights he was waiving and the consequences of his plea, and that he was voluntarily pleading guilty. There was no indication to the contrary during either the canvass in the justice court or the canvass in the state district court. Rather, Marks answered the judges' questions appropriately and lucidly, and indicated that he knowingly, intelligently and voluntarily entered into the plea agreement and was pleading guilty. *See Tanner v. McDaniel*, 493 F.3d 1135, 1146 (9th Cir.), *cert. denied*, 552 U.S. 1068 (2007) (record of the plea hearing indicated that defendant "lucidly and voluntarily decided to pleaded guilty" despite alleged depression); *United States v. Elmer*, 395 Fed. App'x 401, 403 (9th Cir. 2010), *cert. denied*, 562 U.S. 1160 (2011) ("Elmer's claim that her plea was not knowing and voluntary is contradicted by the record of the plea colloquy itself. The transcript reflects she understood the charges against her and the consequences of her plea, was able to respond appropriately to questions by the court, and was able to voice any concerns she had during the hearing."). The district court judge observed Marks at the plea hearing, gave no indication that there was any reason to believe that Marks did not understand the proceedings, and accepted his plea. "[F]indings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 74.

Given this record, it was reasonable for the Nevada Court of Appeals to affirm the denial of relief on Marks's claim that his counsel was ineffective for advising him to enter the plea agreement and plead guilty without a determination of his competence. There was no evidence presented in Marks's first state habeas action contradicting the indications in the record that Marks's plea was knowing, intelligent and voluntary.

Marks presents, in support of this claim of ineffective assistance of trial counsel, evidence not presented in his first state habeas action. This new evidence includes: the report of a neuropsychological evaluation of Marks conducted on November 22, 2017, by Sharon Jones-Forrester, PhD (Exh. 57 (ECF No. 22-14) (filed under seal)); a

February 8, 2018, declaration of Marks's sister, Helen Marks (Exh. 58 (ECF No. 21-11)); medical/psychological records and court records from proceedings prior to the events that gave rise to this case (Exhs. 39, 40, 41, 42, 43 44, 45, 46, 47, 48, 49 (ECF Nos. 21 and 22) (ECF No. 22 filed under seal)); and other records from around the time of the events in this case and subsequent to those events tending to show that Marks suffers from low intellectual functioning, mental illness and traumatic brain injury (Exhs. 50, 51, 53, 54, 55, 56, 59 (ECF Nos. 21 and 22) (exhibits at ECF No. 22 filed under seal)).

The parties agree that Marks's presentation of the new evidence changes his claim of ineffective assistance of counsel, such that, as presented now in this case, it is a different claim from what was asserted in state court in Marks's first state habeas action. *See* Answer (ECF No. 70), p. 17 ("Marks failed to raise this claim in his first state habeas petition."); Reply (ECF No. 72), pp. 1–2. Marks asserted this claim, supported by the new evidence, in his second state habeas action, but in that action the claim was ruled procedurally barred. Therefore, the claim, as now presented, is subject to the procedural default doctrine. Because Marks was not represented by counsel in his first state habeas action, *Martinez* applies, and Marks satisfies the first part of the *Martinez* analysis, in that the lack of counsel in Marks's first state habeas action functions as cause relative to the procedural default. The issue whether Marks can overcome the procedural default of this ineffective assistance of counsel claim, therefore, comes down to the question of prejudice, that is, whether the claim is substantial. *See Martinez*, 566 U.S. at 9.

In her report, Dr. Jones-Forrester does not opine on the question whether Marks's plea in 2015 was knowing, intelligent and voluntary. *See* Neuropsychological Evaluation, Exh. 57 (ECF No. 22-14) (filed under seal). Rather, Dr. Jones-Forrester states that her evaluation was requested "to assist in understanding [Marks's] neurocognitive and psychological functioning, as well as to examine his developmental and psychosocial history to determine any clinical factors that may be pertinent to his case." *Id.* at 1. In her report, after providing information regarding Marks's past

1    intellectual and mental-health issues, recounting her examination and testing of Marks,

2    and concluding that he suffers from low intellectual functioning and neurocognitive

3    deficits, Dr. Jones-Forrester states:

4          As noted in the understanding of legal charges and proceedings
5    section on page one of the present report, John was noted to have
     significant comprehension difficulties, clearly struggles with adequately
6    understanding legal information, and is easily confused and overwhelmed.
     While he has good rapport with his defense attorneys, his poor
7    comprehension will make it difficult for him to identify when he needs
     clarification of legal concepts and will also lead him to easily fail to
8    appreciate the consequences of misunderstanding legal information. He
     identified his charges as robbery with possession of a firearm, but was
9    unable to identify the range of potential penalties related to his charges,
     had a clear misunderstanding of court proceedings, and had a very
10   concrete understanding of the roles played by various members of the
     legal community. Additionally, his ability to clearly understand, follow, and
11   appropriately navigate court procedural rules and deadlines will be very
     compromised by his mild intellectual disability, illiteracy, and poor
12   comprehension, all of which pose significant functional difficulties for him.
     Ultimately, I am concerned that the above intellectual and neurocognitive
13   deficits will pose a barrier to his ability to reasonably and rationally
     understand legal proceedings, and to fully and actively cooperate in his
14   defense with a reasonable degree of rational understanding. Each of the
     above neurocognitive deficits are expected to be lifelong and are not
15   amenable to restoration. John has been found permanently incompetent in
     the past, and this is strongly consistent with his current presentation.
16   Additionally, in a 01/05/01 Forensic Competency Evaluation, Dr. Paglini
     recommended that John be referred for neuropsychological evaluation
17   and to neurology to further examine his significant cognitive deficits, but
     this does not appear to have been completed prior to the current
18   neuropsychological evaluation. It is hoped that the present
     neuropsychological evaluation provided here will be of assistance for the
19   court in determining how his intellectual disability and deficits across
     neurocognitive domains may impact his postconviction writ of habeas
20   corpus.

21   *Id.* at 8–9. Dr. Jones-Forrester makes no reference to Marks's entry of his guilty plea in

22   2015, and she does not provide any analysis of whether that guilty plea could have

23   been, or was, knowing, intelligent and voluntary. Rather, her evaluation focuses on

24   Marks's competence only in a more general sense and, for the most part, at a later time.

25   Dr. Jones-Forrester's evaluation, while it has some marginal relevance to the question

26   of the knowing, intelligent and voluntary nature of Marks's guilty plea, is largely

27   impertinent to that question, and it provides only minimal support for Marks's claim.

28

The same goes for the rest of the new evidence Marks presents, including the declaration of Marks's sister (Exh. 58 (ECF No. 21-11)): while the new evidence may show that he suffers from low intellectual functioning and mental illness, has suffered traumatic brain injury, and has been found incompetent at some times and in some contexts over the last two decades, Marks's evidence does not show that his guilty plea could not have been, or was not, knowing, intelligent and voluntary.

The issue whether Marks can overcome the procedural default of the ineffective assistance of counsel claim in Ground 3A turns on the question of prejudice—that is, is Marks's ineffective assistance of counsel claim, as supported by the new evidence, a substantial claim? The Court finds that it is not. While Marks presents evidence that tends to show that he suffers from low intellectual functioning and mental illness, that he has suffered traumatic brain injury, and that he has been found incompetent in the past, none of those factors necessarily indicates that his guilty plea could not have been, or was not, knowing, intelligent and voluntary, or that his counsel should not have advised him to enter that plea without a determination of his competence. Marks does not show prejudice resulting from his not asserting this claim, as now presented, in his first state habeas action, so he does not overcome the procedural default of the claim. The ineffective assistance of counsel claim in Ground 3A will be denied as procedurally defaulted.

The Court comes to the same conclusion with respect to the substantive claim in Ground 1A, that his guilty plea was not knowing, intelligent and voluntary. The Court does not reach the question whether Marks establishes cause for the procedural default of that claim on account of low intellectual functioning, mental illness or traumatic brain injury; the Court determines that, whether or not he can show such cause, he does not show prejudice, as the claim, as now presented, is not substantial. The claim in Ground 1A will be denied as procedurally defaulted.

### 2.   Alleged Coercion by Trial Counsel (Ground 1B)

In Ground 1B, Marks claims that his federal constitutional rights were violated because his guilty plea was not entered into knowingly, intelligently and voluntarily, because his trial counsel placed undue pressure on him and coerced him into accepting the State's offer. Second Amended Petition (ECF No. 20), pp. 10–12.

Marks did not assert this claim in his first state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14); Appellant's Opening Brief, Exh. 34 (ECF No. 29-34); Order of Affirmance, Exh. 40 (ECF No. 30-5). This claim was first asserted in state court in Marks's second state habeas action, and the state courts ruled it procedurally barred. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 46 (ECF No. 30-11); Findings of Fact, Conclusions of Law and Order, Exh. 66 (ECF No. 53-3); Order of Affirmance, Exh. 62 (ECF No. 40-2). The claim in Ground 1B is therefore subject to denial as procedurally defaulted unless Marks can show cause and prejudice relative to the procedural default.

Marks supports this claim with much the same new evidence that he submits in support of Ground 1A, that is, evidence that he suffers from low intellectual functioning and mental illness, that he has suffered traumatic brain injury, and that he has been found incompetent in the past. *See* Second Amended Petition (ECF No. 20), pp. 10–12; Reply (ECF No. 72), pp. 12–14.

More specifically, Marks points out that Dr. Jones-Forrester stated in her report that his "[a]daptive functioning deficits in the social domain include long-term dependence on others…, being excessively trusting and vulnerable, and lacking self-protective skills." *See* Second Amended Petition (ECF No. 20), p. 11; Reply (ECF No. 72), p. 13 (quoting Neuropsychological Evaluation, Exh. 57 (ECF No. 22-14), p. 6 (filed under seal)). That comment in Dr. Jones-Forrester's report suggests that Marks might have been, to some extent, vulnerable to coercion by his counsel, but it is not evidence that his counsel did in fact improperly coerce him to plead guilty. Marks points to no substantial evidence that trial counsel improperly pressured him to plead guilty.

Furthermore, here again, Marks's claim is contrary to his representations in the plea agreement and in court. The plea agreement stated:

> I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.

Guilty Plea Agreement, Exh. 7, p. 5 (ECF No. 8-7, p. 6). And, in the canvass in the state district court, the following exchanges occurred:

> THE COURT:  Is anybody forcing you to plead guilty?
>
> THE DEFENDANT [Marks]: No, ma'am.
>
> THE COURT:  Are you pleading guilty of your own free will?
>
> THE DEFENDANT: Yes, ma'am.
>
>        \*   \*   \*
>
> THE COURT:  Did you sign it freely—
>
> THE DEFENDANT: Yes.
>
> THE COURT:  —and voluntarily?
>
> THE DEFENDANT: Yes, I did.

Recorder's Transcript, May 4, 2015, Exh. 8, pp. 4–5 (ECF No. 8-8, pp. 5–6). Again, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74; *see also Kaczynski*, 239 F.3d at 1114–15. The Court determines that the claim in Ground 1B is insubstantial within the meaning of *Martinez*, and Marks, therefore, does not overcome the procedural default of the claim. The Claim in Ground 1B is procedurally defaulted, and it will be denied on that ground.

The Court comes to the same conclusions if Grounds 1A and 1B are considered together as one claim. Taken as one claim, the overall claim in Ground 1 that Marks's guilty plea was not knowing, intelligent and voluntary, as presented in this action, is not substantial, and is subject to denial as procedurally defaulted.

## F.    Prior Felonies Used to Enhance Sentence (Grounds 2 and 3C)

In Ground 2, Marks claims that his federal constitutional rights were violated because he was improperly sentenced as a habitual offender, because constitutionally

1  invalid prior felony convictions were used to enhance his sentence. Second Amended
2  Petition (ECF No. 20), pp. 12–14. And, in Ground 3C, Marks claims he received
3  ineffective assistance of his trial counsel, because his counsel failed to challenge the
4  prior convictions used to enhance his sentence. *Id.* at 20–21.

5         Marks did not assert either of these claims in his first state habeas action. *See*
6  Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14);
7  Appellant's Opening Brief, Exh. 34 (ECF No. 29-34); Order of Affirmance, Exh. 40 (ECF
8  No. 30-5). These claims were first asserted in state court in Marks's second state
9  habeas action, and the state courts ruled them procedurally barred. *See* Petition for Writ
10 of Habeas Corpus (Post-Conviction), Exh. 46 (ECF No. 30-11); Findings of Fact,
11 Conclusions of Law and Order, Exh. 66 (ECF No. 53-3); Order of Affirmance, Exh. 62
12 (ECF No. 40-2). The claims in Grounds 2 and 3C are therefore subject to denial as
13 procedurally defaulted unless Marks can show cause and prejudice relative to the
14 procedural defaults.

15        The Court determines that Marks cannot show prejudice relative to the
16 procedural default of the claims in Grounds 2 and 3C, because the claims are not
17 substantial.

18        Under Nevada law, a certified copy of a felony conviction is prima facie evidence
19 of a prior conviction for purposes of adjudication of a defendant as a habitual criminal.
20 *See* NRS 207.016(5). And, also under Nevada law, for purposes of habitual criminal
21 sentencing, a criminal defendant may not challenge the validity of a prior conviction.
22 *See* NRS 207.016(3).

23        In *Lackawanna County Dist. Att'y v. Coss*, 532 U.S. 394 (2001), the Supreme
24 Court ruled that, in limited circumstances, a state prisoner may, through a federal
25 habeas petition, challenge a prior conviction used to enhance a sentence the petitioner
26 is currently serving. *Coss*, 532 U.S. at 403–06. Specifically, the Court ruled that a
27 habeas petitioner may challenge a prior conviction used to enhance a current sentence
28 only where: (1) there was, in the case resulting in the prior conviction, a failure to

24

appoint counsel in violation of the Sixth Amendment under *Gideon v. Wainwright*, 372 U.S. 335 (1963); or (2) the petitioner cannot be faulted for failing to obtain a timely review of a constitutional claim regarding the prior conviction, either because the state courts, without justification, refused to rule on the constitutional claim, or because the petitioner uncovered "compelling evidence" of his innocence after the time for review of the prior conviction expired and such evidence could not have been discovered in time to support a timely challenge to the prior conviction. *See Coss*, 532 U.S. at 403–06.

Marks does not make a showing that this case fits within either of the exceptions described in *Coss*. Marks does not allege that his constitutional right to appointment of counsel was violated in either of the cases resulting in the prior convictions used to enhance his sentence. *See* Second Amended Petition (ECF No. 20), pp. 12–14; Reply (ECF No. 72), pp. 14–18. With respect to the second of the exceptions described in *Coss*—newly discovered evidence—Marks argues:

> Here, this is the first and only available forum for Marks to challenge the constitutionality of his prior convictions. His challenge to the convictions used to enhance his sentence are based on an expert report written by Dr. Jones-Forrester, who found Marks' intellectual disability to be a life-long challenge to his ability to assist in his defense and understand legal proceedings. This is newly discovered and presented evidence. Thus, this is the first time Marks could challenge the constitutionality of his prior convictions, which enhanced his sentence.

Reply (ECF No. 72), p. 17. The Court finds this argument to be without merit. Dr. Jones-Forrester's report provides no substantial support for Marks's contention that his prior convictions were unconstitutional. Furthermore, Marks does not demonstrate that he could not have challenged his prior convictions in post-judgment actions in state court, or why he could not have been examined by an expert like Dr. Jones-Forrester in support of such challenges in such cases. The claim in Ground 2 is insubstantial, Marks cannot show prejudice with respect to the procedural default of the claim, and the claim will be denied as procedurally defaulted.

Regarding the ineffective assistance of counsel claim in Ground 3C, given that state law precluded a challenge to Marks's prior convictions, and given that there is no

showing that the gateway to such challenges under *Coss* was available, it was not unreasonable for Marks's trial counsel to refrain from attempting to challenge those prior convictions, and Marks cannot show *Strickland* prejudice. This claim too, is insubstantial; Marks cannot show prejudice with respect to the procedural default. The claim in Ground 3C will be denied as procedurally defaulted.

### G.    Trial Counsel's Investigation (Ground 3B)

In Ground 3B, Marks claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because counsel failed to adequately investigate his case. Second Amended Petition (ECF No. 20), pp. 19–20.

Marks asserted this claim in his first state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14, pp. 17–22 (ECF No. 29-14, pp. 25–30); Appellant's Opening Brief, Exh. 34 (ECF No. 29-34); Order of Affirmance, Exh. 40, p. 2 (ECF No. 30-5, p. 3). On the appeal in that action, the Nevada Court of Appeals ruled as follows:

> Marks' claims that a more thorough investigation would have shown he was not attempting to rob the victims and the witnesses were unreliable and untrustworthy were belied by the record. And Marks failed to show how a better investigation would have made a more favorable outcome probable.
>
> \*    \*    \*
>
> The factual findings contained in the written order are supported by the record and we conclude the district court did not err by denying Marks' petition without appointing counsel. *See* NRS 34.750(1); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005); *Molina v. State*, 120 Nev. 185, 192, 87 R3d 533, 538 (2004); *Riker v. State*, 111 Nev. 1316, 1325, 905 P.2d 706, 711-12 (1995).

Order of Affirmance, Exh. 40, pp. 2–3 (ECF No. 30-5, pp. 3–4).

Applying the AEDPA standard of review, the Court determines that the Nevada Court of Appeals' ruling was reasonable. Marks's claim was wholly conclusory; he did not in state court make any showing what further investigation would have uncovered that would have warranted Marks declining to enter the plea agreement. A fair-minded jurist could argue that Marks did not make a showing that his trial counsel unreasonably

failed to investigate further or that he was prejudiced. The Court will deny Marks habeas corpus relief on the claim in Ground 3B.

### H.    Trial Counsel's Alleged Failure to Advise Marks Regarding Appeal (Ground 3D)

In Ground 3D, Marks claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because his counsel failed to consult with him regarding his right to appeal and failed to file a notice of appeal on his behalf. Second Amended Petition (ECF No. 20), pp. 21–22.

Marks did not assert this claim in his first state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 14 (ECF No. 29-14); Appellant's Opening Brief, Exh. 34 (ECF No. 29-34); Order of Affirmance, Exh. 40 (ECF No. 30-5). This claim was first asserted in state court in Marks's second state habeas action, and the state courts ruled it procedurally barred. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 46 (ECF No. 30-11); Findings of Fact, Conclusions of Law and Order, Exh. 66 (ECF No. 53-3); Order of Affirmance, Exh. 62 (ECF No. 40-2). The claim in Ground 3D is therefore subject to denial as procedurally defaulted unless Marks can show cause and prejudice relative to the procedural default.

The *Strickland* "test applies to claims ... that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In order to satisfy the first prong, the petitioner must make one of the following showings: (1) that counsel "fail[ed] to follow the defendant's express instructions with respect to an appeal"; (2) that "a rational defendant would want to appeal" and counsel did not consult with the defendant about appealing; or (3) that the defendant "reasonably demonstrated to counsel that he was interested in appealing" and counsel did not consult with the defendant. *Id.* at 478, 480. The *Flores-Ortega* Court "reject[ed] a bright-line rule that counsel must always consult with the defendant regarding an appeal." *Id.* at 480.

Marks does not claim that he expressly instructed his counsel to initiate an

appeal or that he reasonably demonstrated to his counsel that he was interested in

appealing. *See* Second Amended Petition (ECF No. 20), pp. 21–22; Reply (ECF No.

72), pp. 28–29. He does argue, as follows, that, under the circumstances, his counsel

should have known that a rational defendant would have wanted to appeal:

> Here, any rational defendant would want to appeal. Marks was
> sentenced to 8-20 years. Additionally, he's been found incompetent
> multiple times and was incompetent when he entered the guilty plea in the
> instant case (*see* [Grounds 1A and 3A] incorporated here); therefore, he
> had [nonfrivolous] grounds for appeal.

Reply (ECF No. 72), p. 29. However, Marks's claims that he was "incompetent when he

entered the guilty plea," in Grounds 1A and 3A, are based on evidence from outside the

trial court record; Marks could not have properly asserted such claims on a direct

appeal. *See Tabish v. State*, 119 Nev. 293, 312 n.53, 72 P.3d 584, 596 n.53 (2003);

*Hooper v. State*, 95 Nev. 924, 926, 604 P.2d 115, 116 (1979) ("Matters outside the

record on appeal may not be considered by an appellate court."). Marks does not point

to any nonfrivolous ground for appeal that could have been asserted on a direct appeal

from his conviction.

Furthermore, in considering whether it was apparent that a rational defendant

would have wanted to appeal, the fact that Marks pleaded guilty is "a highly relevant

factor," because it "reduces the scope of potentially appealable issues," and because it

"may indicate that the defendant seeks an end to judicial proceedings." *Flores-Ortega*,

528 U.S. at 480.

The plea agreement signed by Marks stated:

> By entering my plea of guilty, I understand that I am waiving and
> forever giving up the following rights and privileges:
>
> \*   \*   \*
>
> 6.    The right to appeal the conviction with the assistance of an
> attorney, either appointed or retained, unless specifically reserved in
> writing and agreed upon as provided in NRS 174.035(3). I understand this
> means I am unconditionally waiving my right to a direct appeal of this

conviction, including any challenge based upon reasonable constitutional, jurisdictional or other grounds that challenge the legality of the proceedings as stated in NRS 177.015(4). However, I remain free to challenge my conviction through other post-conviction remedies including a habeas corpus petition pursuant to NRS Chapter 34.

Guilty Plea Agreement, Exh. 7, pp. 4–5 (ECF No. 8-7, pp. 5–6). Marks told the state district court judge that his counsel explained to him everything in the plea agreement and that he understood it. *See* Recorder's Transcript, May 4, 2015, Exh. 8, p. 5 (ECF No. 8-8, p. 6). This is further reason why Marks's counsel would not have believed that a rational defendant would wish to appeal under the circumstances.

This claim is not substantial. Marks does not overcome the procedural default of the claim under *Martinez.* Ground 3D will be denied as procedurally defaulted.

## I.    Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

Applying the standard articulated in *Slack*, the Court finds that a certificate of appealability is unwarranted. The Court will deny Marks a certificate of appealability.

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.    Conclusion**

      **IT IS THEREFORE HEREBY ORDERED** that Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 20) is **DENIED**.

      **IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability.

      **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly and close this case.

      DATED October 21, 2022.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE